[Cite as *State v. Kirks*, 2021-Ohio-2027.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| KENNETH M. KIRKS, | : | Case No. 2020 CA 0060 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Richland County
                                                           Court of Common Pleas, Case No.
                                                           2019 CR 0967


JUDGMENT:                                        Affirmed


DATE OF JUDGMENT:                        June 16, 2021


APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

GARY BISHOP                                       GREGORY SCOTT ROBEY
Prosecuting Attorney                              Robey & Robey
Richland County, Ohio                             14402 Granger Road
                                                           Cleveland, Ohio 44137
By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1}   Defendant-appellant Kenneth Kirks appeals his conviction and sentence from the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On February 11, 2020, the Richland County Grand Jury indicted appellant on sixteen counts of counterfeiting in violation of R.C. 2913.30(B)(4) and (C)(1), felonies of the third degree, and one count of forgery in violation of R.C. 2913.31(A)(3), a felony of the fifth degree. At his arraignment on March 3, 2020, appellant entered a plea of not guilty to the charges. A jury trial was scheduled for April 7, 2020.  Pursuant to a Judgment Entry filed on March 24, 2020, the trial was continued on appellee's motion due to a public health emergency posed by COVD-19 and time was tolled for speedy trial purposes pursuant to R.C. 2945.72(H). The trial was continued to June 2, 2020.

{¶3}   On June 1, 2020, appellant filed a motion to dismiss on statutory speedy trial grounds. The trial, via an Order filed on June 4, 2020, ordered that the jury trial be continued to a date at the court's convenience and that "[t]ime is tolled to the new trial date on defendant's motion." The trial court, as memorialized in Judgment Entry filed on July 2, 2020, denied the Motion to Dismiss.  A jury trial was scheduled for July 21, 2020.

{¶4}   On July 16, 2020, appellant filed a Motion for a Continuance. Pursuant to a Judgment Entry filed on July 16, 2020, the trial court granted the Motion for a Continuance. The trial was rescheduled to August 18, 2020 pursuant to a Judgment Entry filed on July 17, 2020. The trial court ordered that time was tolled for speedy trial purposes.

{¶5} A jury trial commenced on August 18, 2020. The following evidence was adduced at trial.

{¶6} On November 2, 2019, Josh Adamescu of the Mansfield Police Department was providing security for a haunted prison event at the Ohio State Reformatory. The event is a Halloween style carnival hall both inside and outside the Reformatory, which is closed. Officer Adamescu was providing off-duty security and was sitting in a bus that served as a ticket window. He was "watching the money so that nobody would take it essentially." Transcript at 193.

{¶7} At some point, Officer Adamescu was advised by staff members of the Reformatory that there was someone selling tickets to people outside the entry of the event. He was advised that there was an African-American male outside with a bunch of tickets in his hand. Officer Adamescu and his partner approached appellant, who fit the description of the scalper, and asked him what was going on. Appellant told Officer Adamescu that he was supposed to have a bunch of family members from Cleveland coming down to go through the haunted prison, but that they had all canceled so he was trying to sell the tickets to get his money back. Officer Adamescu advised appellant that he could not sell the tickets and appellant asked if he could still use the tickets to go into the Reformatory. A staff member told appellant that he could. Appellant then left and went inside the haunted prison.

{¶8} Detective Terry Butler of the Mansfield Police Department testified that he also was working extra duty detail at the Ohio State Reformatory and that he had some interaction with appellant. He indicated that on November 1, 2019, the previous day, appellant had been escorted off the property for trying to sell tickets. Appellant, at the

time, said that one or two weeks prior, he had been given the tickets by an individual named Adrian Berry at a BP station and told to sell them or give them away. Detective Butler testified that one of the persons in charge of the haunted prison took some of the tickets to see if they were valid and discovered that they had been bought using credit cards from different people in different states.  The tickets were collected.

{¶9} Detective Butler testified that when they checked appellant's identification, it was discovered that appellant was on parole. Appellant's parole officer, Kenny Kaufman, was then contacted. When Kaufman arrived, he spoke to appellant. Appellant's vehicle, which was in the parking lot, was searched and nineteen debit Visa cards were located in the vehicle. Seventeen of the cards bore no name or a name different from appellant's.   One of the cards belonged to Jason Milton Miller of Euclid, Ohio and had been lost. Two of the cards were legitimate cards belonging to appellant.  Also found in the vehicle were a driver's license and the learner's permit for appellant.

{¶10} Detective Sergeant Matthew Loughman of the Mansfield Police Department testified that he interacted with appellant on November 2, 2019. At the time, Sergeant Loughman was working a security detail at the haunted prison. Sergeant Loughman testified that after the tickets were collected, it was discovered that the name Adrian Berry was found on the tickets. Berry's name was run through a database of individuals who had purchased tickets. Berry had either made or attempted to make five separate purchases with five separate credit cards from five separate states, which "set out some red flags." Transcript at 265. One purchase was for almost $3,000.00 and another for almost $2,000.00. Two of the purchases were declined by the credit card company that issued the card. The tickets also bore the name of Jim Simfenderfer as the name on the

credit card used to purchase tickets. Simfenderfer had reported his card stolen and reported to Sergeant Loughman that he did not give permission for someone to use the card to purchase tickets.

{¶11} Sergeant Loughman contacted Special Agent Nate McLaughlin with the Secret Service and asked for his assistance in the investigation. The Secret Service is highly involved in investigations of counterfeit money and credit cards. Sergeant McLaughlin used specialized card readers that showed that someone had wiped the numbers on the cards clean and had put new credit card numbers on the debit cards.

{¶12} Secret Service Special Agent Nate McLaughlin testified that sixteen of the cards "had different encoded information than what was shown on the front of the card." Transcript at 285. He testified that fifteen of the sixteen cards were prepaid debit cards while the sixteenth was a Speedway gas station Cash Fuel card.

{¶13} After discovering that the sixteen cards were counterfeit, Agent McLaughlin interviewed appellant at the jail. Appellant told him that he had purchased 35 Ohio Reformatory tickets and the sixteen cards from Adrian Berry for a total of $300.00. The face value of each ticket was $45.00. Appellant said that he had attempted to use the cards at several businesses and at a couple he was successful while at others he was declined. Appellant said that Berry always carried around a laptop with charging equipment and that Berry would regularly send appellant to go to a store and buy something. When appellant returned, Berry would have more altered plastic cards ready to be used. When Agent McLaughlin asked appellant if Berry was making the altered cards on his laptop, appellant said "Yeah, I think so." Transcript at 305. Agent McLaughlin

testified that appellant never told him that Berry had left the cards in appellant's vehicle unbeknownst to appellant.

{¶14} At trial, appellant testified that he had bought the tickets from Berry for $300.00. He testified that he had 30 to 35 of the tickets and that he tried to sell them for $20.00 each. According to appellant, he did not get anything else with the purchase of the tickets. Berry, appellant testified, told appellant that he could make $600.00 if he sold the tickets. Appellant claimed that Berry was with him on November 2, 2019 at the Reformatory and that Berry had left the counterfeit cards in appellant's vehicle. Appellant admitted to using one of the cards found in his vehicle at a restaurant on the day he was arrested. Appellant also testified that he told Special Agent Napier (sic) that Berry had left the cards in his vehicle.

{¶15} Appellant admitted that he told Agent McLaughlin that he had tried to use the cards for food and claimed that Berry had left the cards in appellant's vehicle. He testified that he never sold any of the tickets although he tried to. Appellant admitted that the total value of the tickets that he had was over $1,000.00 and that he was trying to sell tickets that were paid for by Jim Simfenderfer. Appellant denied telling Sergeant McLaughlin that he had bought the counterfeit cards from Berry, but also said that he remembered telling Sergeant McLaughlin that he bought credit cards from Berry. Appellant claimed that despite repeatedly, during his interview by Agent McLaughlin, talking about receiving cards from Berry and the programming of those cards with counterfeit information, he was actually talking about the tickets for the haunted prison.

{¶16} The jury convicted appellant on all counts. On August 24, 2020, appellant was sentenced to 36 months in prison on counts 1-8 and 12 months in prison on counts

9-17. Counts 1, 5, 9, 13 and 17 were ordered to run consecutively for an aggregate prison sentence of 9 years. Appellant was also fined $4,000.00.

{¶17} On August 26, 2020, appellant was resentenced. The trial court corrected the fine to be $500.00 on counts 1 through 16 for a total fine of $8,000.00.

{¶18} Appellant now appeals, raising the following assignments of error on appeal:

{¶19} "I. APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHT TO A SPEEDY TRIAL WERE VIOLATED."

{¶20} "II. THE STATE FAILED TO PRESENT SUFFFICIENT EVIDENCE TO SUSTAIN CONVICTIONS ON ALL COUNTS."

{¶21} "III. APPELLANT'S CONVICTIONS ON ALL COUNTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

{¶22} "IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL."

{¶23} "V. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES."

{¶24} "VI. THE TRIAL COURT ERRED WHEN IT IMPOSED FINES UPON APPELLANT WHO WAS INDIGENT."

I

{¶25} Appellant, in his first assignment of error, argues that his constitutional and statutory speedy trial rights were violated. Appellant argues that his trial did not begin until approximately 291 days after his arrest.

**{¶26}** Speedy-trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980). Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

**{¶27}** A speedy-trial claim involves a mixed question of law and fact. *State v. Wood*, 5th Dist. Fairfield No. 2020 CA 00023, 2021-Ohio-2, ¶¶ 19-20 citing *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. We apply a de novo standard of review with regard to legal issues. When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the State. *Id.* citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶12.

**{¶28}** R.C. 2945.71(C)(2) requires "[a] person against whom a charge of felony is pending * * * be brought to trial within two hundred seventy days after his arrest." Appellant contends he was not brought to trial within 270 days of his arrest. R.C. 2945.71(E)

provides "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."

{¶29} In the case sub judice, appellant was arrested on November 2, 2019. He was incarcerated from November 3, 2019 through January 2, 2020. Not counting the day of arrest  or the day of release, this would be 59 days and the triple count provision would bring that to 177 days. Appellant was released from jail on January 2, 2020 due to overcrowding.

{¶30} Appellant was out of custody from January 3, 2020 to February 17, 2020, for a total of 40 days. Added to the 177 days, this totals 217 days.

{¶31} A warrant was issued for his arrest on February 11, 2020 when the indictment was filed. Appellant was rearrested on the warrant on February 21, 2020 in Summit County. From February 21, 2020 to February 26, 2020, appellant was held in the Summit County Jail another four days when he was picked up on a warrant. Multiplied by the triple count provision, this would be 12 days. Appellant was incarcerated in the Richland County jail from February 26, 2020 through March 20, 2020, which is 23 days. However, on March 9, 2020, the speedy trial time was tolled due to House Bill 197 due to Covid-19.  The period from February 26, 2020 through March 9, 2020 is 11 days. Multiplied by the triple count provision this would be 33 days.  Adding 217, 12 and 33 we arrive at a figure of 262 days. Appellant, therefore, did not reach the 270 day limit of speedy trial time chargeable to the State.

{¶32} Appellant also argues that his constitutional speedy trial rights were violated.  However, at no point during the hearing before the trial court or in his motion before the trial court did appellant allege that his constitutional speedy trial rights were

violated. Therefore, any argument with regard to the constitutional, rather than statutory, violation of his pretrial rights, is waived on appeal. See *State v. Pyle*, 5th District Coshocton No 04 CA 12, 2004-Ohio-6201, ¶ 22.

**{¶33}** Appellant's first assignment of error is, therefore, overruled.

### II, III

**{¶34}** Appellant, in his second and third assignments of error, contends that his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

**{¶35}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶36}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶37}  Appellant was convicted of counterfeiting in violation of R.C. 2913.30(B)(4) and forgery in violation of R.C. 2913.31(A).  R.C. 2913.30 states, in relevant part, as follows:

{¶38}  (B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

{¶39}  (1) Falsely make, forge, counterfeit, or alter any obligation or other security of the United;

{¶40}  (4) Without authorization of the issuer, falsely make, forge, counterfeit, alter, or knowingly possess any access device.

{¶41}       "Access device" is defined as  meaning "any debit or credit card representing a monetary security or retail amount by any financial institution, including a bank, savings bank, savings and loan association, credit union, or business entity. R.C. 2913.30.

{¶42}  In turn, R.C. 2913.31 states, in relevant part, as follows:

{¶43}  (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

{¶44}  (2) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

{¶45}  R.C. 2901.22 provides that "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶46} In the case sub judice, there was testimony that appellant told Special Agent McLaughlin that he had paid Adrian Berry $300.00 to buy fraudulently purchased tickets and 16 cards found in his possession. The tickets alone had a retail value of over $1,000.00. While appellant claimed that Berry left the cards in appellant's car without his knowledge, the jury, as trier of fact, was in the best position to assess his credibility. Appellant testified that he went to the Ohio State Reformatory with Berry but failed to tell Special Agent McLaughlin this. Agent McLaughlin testified that appellant told him that he thought that Berry was making altered credit cards. Appellant knew that Berry used his laptop computer to alter the information on the cards and admitted that he tried, sometimes successfully sometimes not, to use the cards to make purchases at restaurants.

{¶47} We find that, as noted by appellee, when presented with the fact that appellant knew that Berry made altered cards and with appellant's decision to buy 16 cards from him, a jury could reasonably infer that appellant bought the cards knowing them to be fraudulent with purpose to use them.

{¶48} As is stated above, appellant bought the tickets and 16 credit cards for total of $300.00. The tickets alone had a retail value of over $1,000.00. There was evidence that appellant was trying to sell the tickets to other people knowing that they had been forged and knowing that they had been purchased in an unlawful scheme. The tickets were purchased by Jim Simfenderfer. Appellant possessed the tickets with intent to deliver them.

{¶49} We find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant committed the

offenses of counterfeiting and forgery and that the jury did not lose its way in convicting appellant of such offenses.

{¶50} Appellant's second and third assignments of error are, therefore, overruled.

IV

{¶51} Appellant, in his fourth assignment of error, argues that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal on the counterfeiting counts.

{¶52} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶53} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶54} Each of the sixteen counterfeiting counts asked the jury to determine if appellant committed the offense of counterfeiting under R.C. 2913.30(B)(4) and each offense involved five or more access control devices  The evidence, as is set forth above, showed that appellant possessed more than five access control devices as he committed

each of the 16 counts. We find that there was sufficient evidence at trial to sustain a conviction and that the trial court did not err in denying appellant's motion.

{¶55} Appellant's fourth assignment of error is, therefore, overruled.

V

{¶56} Appellant, in his fifth assignment of error, maintains that the trial court erred in imposing consecutive sentences.

{¶57} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum,* 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231 ¶ 1. Pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)–(b).

{¶58} R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences. In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C) (4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶23. This statute requires the trial court to undertake a three-part analysis in order to impose consecutive sentences.

{¶59} R.C. 2929.14(C)(4) provides,

{¶60} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the

public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶61}** (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶62}** (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶63}** (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶64}** Thus, in order for a trial court to impose consecutive sentences, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two

or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

**{¶65}** In the case sub judice, the trial court found that consecutive sentences were necessary to protect the public from future crime or to punish the offender and that consecutive sentences were not disproportionate to the offender's conduct and to the danger the offender poses to the public. The trial court further found that appellant was on post release control at the time of the offenses and that appellant had convictions for felonious assault, abduction, failure to comply and drug trafficking. The trial court, in sentencing appellant, also noted that appellant had served approximately twelve and a half years in prison and then was placed on three years of post release control. Appellant, the trial court noted, had spent 15 ½ years of his life with the Department of Rehabilitation and Corrections which was about half of his life since appellant was 35 years old.

**{¶66}** In this case, the record does establish that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences. We also note that in the sentencing entry, the trial court found that consecutive sentences were necessary to protect the public from future crime or to punish the offender; were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; that the offender committed one or more of the offenses while under a community control sanction or PRC for a prior offense; that at least two of the multiple offenses were committed as part of one or more courses of conduct, and that

the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of appellant's conduct. The trial court also found that the offender's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by the offender.

**{¶67}** Appellant's fifth assignment of error is, therefore, overruled.

VI

**{¶68}** Appellant, in his sixth assignment of error, argues that the trial court erred in imposing $9,000.00 in fines upon appellant because appellant was indigent.

**{¶69}** R.C. 2929.18(B)(1) establishes a procedure for avoiding imposition of mandatory fines applicable to certain felony drug offenses. That section provides:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

**{¶70}** Under Ohio law, a trial court must impose a mandatory fine unless (1) the offender files an affidavit of indigency prior to sentencing, and (2) "the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines." *State v. Gipson,* 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998).

**{¶71}** Appellant did not file an affidavit prior to sentencing. Therefore, the trial court was not required to consider whether appellant was unable to pay the mandatory fine.

**{¶72}** Appellant's sixth assignment of error is, therefore, overruled.

**{¶73}** Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.